**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

**KVC DOMINION LLLP; a Wyoming LLLP**
**RUSSELL SINACORI, individually and Derivately;**
**THE SINACORI FAMILY TRUST, derivatively on behalf of CAVR / LIVETOBEHAPPY, INC. / PARAGONX HOLDINGS, INC.,**

Plaintiffs,

v.

**CAVU, Inc., aka CAVR / LIVETOBEHAPPY, INC. /PARAGONX HOLDINGS, INC., a nominal defendant;**
**SPARTAN CAPITAL SECURITIES, LLC;**
**SPARTAN CAPITAL; JOHN LOWREY;**
**STEPHEN FAUCETTA; JASON DIAMOND;**
**KIM MONCHIK; LUCOSKY BROOKMAN LLP; ,**

Defendants.

---

**COMPLAINT FOR DERIVATIVE RELIEF, INDIVIDUAL RELIEF FOR RUSSELL SINACORI AND KVC DOMINION LLLP, VIOLATIONS OF THE FEDERAL SECURITIES LAWS, PROFESSIONAL NEGLIGENCE, FRAUD, CIVIL CONSPIRACY, AND EQUITABLE RELIEF; DEMAND FOR JURY TRIAL**

Plaintiffs, through counsel, allege the claims below derivatively on behalf of CAVR / LiveToBeHappy, Inc. / ParagonX Holdings, Inc. (the "Company"), except that Russell Sinacori asserts the distinct individual claim identified in Count VIII, as does KVC Dominion LLLP:

## NATURE OF THE ACTION

1.- This action arises from a securities-financing scheme directed at a Nevada corporation headquartered in Oklahoma. Plaintiffs retained **Spartan Capital**

**Securities, LLC** ("Spartan Securities") to locate investors and act as the Company's exclusive securities intermediary. Plaintiffs paid Spartan substantial cash and stock compensation for that work.

2.- Spartan then directed the Company to **Lucosky Brookman LLP** ("Lucosky Brookman"), a securities law firm that, on information and belief, had previously represented Spartan Securities in other securities work. Spartan did not disclose that relationship, the resulting conflict, or the extent of its coordination with Lucosky Brookman before directing the Company to use the firm in connection with its financing and registration path.

3.- Spartan sourced only two investor-side financing participants for the Company's April–May 2022 convertible-loan transactions: Brett Rosen and Stock Loan Solutions, Inc. Neither RB Capital Partners, Inc. nor Stock Loan Solutions, Inc. is named as a defendant in this action. Plaintiffs allege that Spartan was paid from the proceeds of the transactions it sourced.

4.- Federal authorities later publicly charged Brett Rosen, Deborah Braun, and RB Capital Partners in a securities-fraud and market-manipulation matter involving other public companies. Those charges do not establish liability in this case. They did, however, first reveal facts supporting Plaintiffs' good-faith belief that the investor-side conduct and financing structure Spartan introduced to the Company were part of the same or a materially similar scheme that injured the Company here.

5.- The fraud alleged here was not simply that an anticipated S-1 offering failed. Plaintiffs allege that Spartan, Lucosky Brookman, Rosen, Braun, and other unknown

participants used the Company's securities transactions to obtain compensation, access to Company securities, financing rights, and trading or resale opportunities while concealing material conflicts, the true character and risks of the investor-side financing, and the coordinated nature of the transaction.

6.- The deception induced the Company to sell and issue securities, to pay cash and stock consideration, to forego alternative financing, and to proceed on a registration path that Defendants knew or recklessly disregarded was materially compromised by undisclosed conflicts and risks. The concealed risks materialized in the collapse of the Company's stock price, loss of financing access, and destruction of Company and shareholder value.

7.- Plaintiffs seek compensatory, rescissionary, restitutionary, equitable, and other available relief. Plaintiffs do not assert a private aiding-and-abetting claim under the Exchange Act; rather, they allege that each Defendant committed primary deceptive acts or is liable as a controlling person or under applicable Oklahoma law.

## PARTIES AND DERIVATIVE STANDING

8.- Nominal Defendant **CAVR / LiveToBeHappy, Inc. / ParagonX Holdings, Inc.** (the "Company") is a Nevada corporation with its corporate headquarters in Oklahoma. Its common stock traded under the symbol CAVR during the relevant period. The Company was known as LiveToBeHappy, Inc. when it entered the Spartan agreements and later used the name ParagonX Holdings, Inc. in connection with the draft Form S-1. The Company is named solely as a nominal defendant because the claims belong to it and it refused Plaintiffs' demand that it pursue them.

9.- Plaintiff **KVC Dominion LLLP** is, and was at all relevant times, a shareholder of the Company. It brings this action derivatively for the benefit of the Company. KVC Dominion was to receive $1.1 million in additional options and grants.

10.- Plaintiff **KVC Dominion Irrevocable Trust** is the general partner of KVC Dominion LLLP and brings this action derivatively in that capacity for the benefit of the Company.

11.- Plaintiff **Russell Sinacori** is a shareholder, owner, principal, and former chief executive officer of the Company. He brings this action derivatively for the benefit of the Company and, in the alternative and only to the extent permitted by law, individually for his distinct compensation-agreement loss caused by the collapse of the registration and financing path.

> 11A.- Mr. Sinacori's compensation agreement provided for compensation contingent on, or materially dependent upon, the Company's successful registration, financing, and related corporate transactions. As a direct and foreseeable consequence of the registration's collapse and the conduct alleged in this Complaint, Mr. Sinacori lost compensation valued at approximately **$1,000,000**. This loss is personal to Mr. Sinacori, is not merely a diminution in the value of his Company securities, and is pleaded separately from the Company's derivative damages.

12.- Plaintiff **The Sinacori Family Trust** is, and was at all relevant times, a shareholder of the Company and brings this action derivatively for the benefit of the Company.

12A.- Plaintiffs fairly and adequately represent the interests of the Company and its shareholders similarly situated in enforcing the Company's rights.

12B.- Before filing this action, Plaintiffs made a demand on the Company that it investigate and pursue claims arising from Spartan's investor introductions, the investor-side financing transactions, the alleged conflicts and omissions, and the resulting injury to the Company.

12C.- The Company refused Plaintiffs' demand and declined to pursue the claims asserted in this Complaint. Plaintiffs therefore bring this action derivatively to enforce rights belonging to the Company.

12D.- The Company is aligned nominally as a defendant solely because it refused demand. Plaintiffs seek recovery for the Company, not a personal recovery for themselves, except for any award of fees, costs, or other derivative relief authorized by law.

13.- Defendant **Spartan Securities** is a nationally registered broker-dealer and securities firm. It held itself out as qualified to source investors, conduct investment-banking work, and serve as the Company's exclusive agent, advisor, or underwriter in securities offerings.

14.- Defendant **Spartan Capital** is affiliated with Spartan Securities and participated in the financial-advisory relationship through which the Company issued approximately 58,000,000 shares of Company stock as compensation.

15.- Defendant **John Lowrey** is the current Chief Executive Officer of Spartan Securities. On information and belief, Lowrey exercised executive authority over Spartan Securities' investment-banking, compliance, supervisory, investor-introduction, compensation, and securities-financing activities relevant to this action; knew of or recklessly disregarded the conduct alleged; and participated in, authorized, ratified, supervised, or had the power to prevent the challenged conduct.

16.- Defendant **Stephen Faucetta** is a Managing Director of Spartan Securities. On information and belief, Faucetta participated in, knew of, or had responsibility and authority concerning Spartan's investment-banking, investor-introduction, financing, due-diligence, compensation, or supervisory activities relevant to the Company's transactions; and participated in, authorized, ratified, supervised, or had the power to prevent the challenged conduct.

17.- Defendant **Jason Diamond** signed the Spartan engagement agreement as Spartan Securities' Managing Director and Head of Investment Banking. He participated in the agreement and the securities-financing relationship alleged here.

18.- Defendant **Kim Monchik** was identified in the Spartan engagement agreement as a Spartan Securities notice recipient and, on information and belief, participated in, knew of, or controlled aspects of the financing and advisory relationship.

19.- Defendant **Lucosky Brookman LLP** is a securities law firm. On information and belief, Spartan referred the Company to Lucosky Brookman to provide legal work connected to the Company's financing, corporate-securities, and registration path.

Lucosky Brookman accepted the engagement, owed the Company duties of competent and conflict-free professional service, and participated in the acts and omissions alleged below.

**JURISDICTION AND VENUE**

20. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and exclusive jurisdiction under Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, because this action arises under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, and Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

21. This Court has supplemental jurisdiction over the Oklahoma-law claims under 28 U.S.C. § 1367 because those claims arise from the same securities-financing transactions and common nucleus of operative fact.

22. Venue is proper in this District under 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). The Company maintains its corporate headquarters in this District; material events and omissions giving rise to the claims occurred in, were directed to, or caused substantial effects in this District; and the engagements, communications, investor introductions, financing transactions, legal services, and resulting injury were directed to or felt at the Company's Oklahoma headquarters. Spartan transacted securities business with the Company in Oklahoma. Personal jurisdiction exists under 15 U.S.C. § 78aa's nationwide-service provision. It also exists because each Defendant purposefully directed securities, legal, advisory,

communications, or financing activity to the Company at its Oklahoma corporate headquarters and caused foreseeable injury in Oklahoma.

## FACTUAL ALLEGATIONS

### *A. Plaintiffs paid Spartan to locate investors and control the Company's securities-financing process.*

23.- On or about March 14, 2022, the Company entered a written investment-banking engagement with Spartan Securities, dated March 11, 2022 and signed by Spartan on March 14, 2022.

24.- The agreement represented that Spartan Securities would serve as the Company's exclusive agent, advisor, or underwriter in any offering of the Company's securities during the engagement term.

25.- In entering the engagement, the Company relied on Spartan's representations that it would use its securities-market expertise and investor-access role to identify suitable financing sources and to advise the Company concerning its available financing and registration alternatives.

26.- Spartan's contractual exclusivity and transaction-based compensation gave it both the opportunity and financial incentive to control the Company's financing process and the investors presented to the Company.

27.- The Company paid Spartan a $25,000 non-refundable advance upon execution. The agreement also provided Spartan a cash fee or underwriter discount equal to 9% of gross proceeds raised in an offering, warrant coverage, expense

reimbursement, a right of first refusal, and an 18-month tail for financing involving persons Spartan contacted or introduced.

28.- The exclusivity, lock-up, and financing restrictions gave Spartan practical control over the Company's access to prospective investors and alternative capital. The Company agreed that investor inquiries would be referred to Spartan and that, absent Spartan's written consent, it would not pursue competing securities transactions or registration activity.

29.- On or about March 14, 2022, the Company also entered a financial-advisory relationship with Spartan Capital and issued Spartan Capital approximately 58,000,000 shares of Company stock. Plaintiffs estimate the then-market value of that compensation at approximately $1.25 million.

***B. Spartan referred Lucosky Brookman while failing to disclose the alleged conflict and coordinated relationship.***

30.- Rather than independently identifying conflict-free securities counsel, Spartan referred the Company to Lucosky Brookman for legal work tied to the Company's financing and registration path.

31.- On information and belief, Lucosky Brookman had represented Spartan Securities in other securities work before or during the relevant period. Spartan referred the Company to Lucosky Brookman to advise on and pursue the same or closely related securities-financing and registration path from which Spartan expected to receive, and received, fees, stock compensation, and other transaction-based benefits.

31A.- The conflict was so direct and substantial that Lucosky Brookman could not provide the Company independent, loyal, and candid professional judgment concerning whether the Company should accept Spartan's investor introductions, financing terms, exclusivity restrictions, compensation demands, or registration strategy. The firm's professional duties to the Company were materially limited by its relationship with Spartan and by Spartan's financial interest in the transactions.

31B.- No reasonable disclosure or consent could cure the conflict as alleged because the core engagement required Lucosky Brookman to evaluate, advise on, and potentially oppose the conduct, recommendations, compensation, and financing structure of Spartan—the firm's existing or recent client and the source of the referral. Lucosky Brookman therefore should have declined the representation and should not have pursued the Spartan-directed financing or registration path.

32.- Neither Spartan nor Lucosky Brookman disclosed the nature, scope, financial significance, or effect of their relationship to the Company before the Company relied on Spartan's referral and proceeded with the financing and registration path. Neither obtained the Company's informed consent after full disclosure of the conflict, even assuming such consent could have been effective.

33.- Spartan's referral, Lucosky Brookman's acceptance of the engagement, and both firms' participation in the transaction materially reinforced the appearance that the

investor-side financing was legitimate, appropriately diligenced, and suitable for the Company.

***C. Spartan located only two investor-side participants, received fees, and concealed material risks.***

34.- In April and May 2022, investor-side participants introduced through Spartan, including Brett Rosen and Stock Loan Solutions, invested approximately $1.5 million through convertible-loan agreements.

35.- The Company paid Spartan, or Spartan withheld, approximately 8% of the proceeds—approximately $125,000—as a transaction-based fee for the investments Spartan sourced.

36.- The Company's stock traded at approximately $0.0325 per share when Spartan's agreements were signed and the investor-side transactions occurred.

37.- Spartan did not disclose material information necessary for the Company to assess the transactions, including: (a) the full relationship among Spartan, Lucosky Brookman, Rosen, Braun, RB Capital, Stock Loan Solutions, and other participants; (b) the history, purpose, and expected effect of the convertible-financing structure; (c) known or suspected risks of short selling, conversion-based dilution, secret resale, promotion, or manipulative trading; (d) Spartan's financial conflicts arising from cash, stock, warrant, tail, and right-of-first-refusal compensation; and (e) the risk that Spartan's exclusivity provisions would prevent the Company from obtaining safer or more favorable financing.

38.- Lucosky Brookman failed to disclose its conflict, failed to decline a representation it could not undertake loyally and independently, and failed to provide candid, independent advice regarding the material legal and securities risks created by the transaction Spartan sourced and from which Spartan profited. Instead, on information and belief, Lucosky Brookman pursued the Spartan-directed financing and registration path despite the nonwaivable conflict alleged above.

***D. The S-1 path failed, the Company's stock collapsed, and the concealed risk materialized.***

39.- In or about February 2023, at Spartan's direction and with Lucosky Brookman's participation on information and belief, the Company confidentially submitted a draft Form S-1 to the SEC.

40.- On March 13, 2023, the SEC issued a comment letter identifying issues that included disclosures about the April and May 2022 convertible loans, capitalization and dilution, risk factors, and trading-market disclosures.

41.- The Company never completed the S-1. Spartan did not complete an underwritten offering and did not source additional capital after the two investor-side transactions.

42.- Within approximately one year after the Spartan engagement, the Company's stock traded at approximately $0.007 per share.

43.- KVC Dominion LLLP's estimated market value fell from approximately $4.58 million to less than approximately $1 million. The Sinacori-related holdings fell from

approximately $13 million to approximately $3 million. The Company's stock and enterprise value never recovered.

44.- The decline impaired the Company's ability to raise capital and caused additional damage to the Company, its shareholders, and the individuals who guaranteed Company-related obligations in reliance on the Company's expected financing and equity value.

***E. The later Rosen prosecution and SEC action supplied newly discovered facts of the alleged scheme.***

45.- On January 21, 2026, the SEC filed **Securities and Exchange Commission v. Rosen et al., No. 3:26-cv-00361-AJB-BJW (S.D. Cal.)**, naming Brett Rosen, Deborah Braun, David M. Massey, and RB Capital Partners, Inc. The United States later intervened, and the civil action was stayed in light of the related criminal matter.

46.- Publicly available information concerning the related criminal matter and SEC action disclosed allegations of securities fraud and market manipulation involving public-company financing, stock promotion, and trading conduct. Plaintiffs allege only that these public proceedings provided new information bearing on the investor-side participants Spartan brought to the Company and the need to investigate the parallel conduct alleged here.

47.- Plaintiffs do not contend that an indictment, governmental complaint, or stay order conclusively establishes any Defendant's civil liability in this action. Plaintiffs allege that the newly public information, coupled with the facts of the Company's own transactions, supports a good-faith inference of a common or similar scheme

and warrants discovery into Defendants' communications, diligence, conflicts, trading, and compensation.

***F. Particularized basis for scienter and primary participation.***

48.- Spartan's scienter is supported by its status as a registered broker-dealer and investment banker, its exclusive control of the investor-introduction channel, its direct cash and stock compensation, its right to participate in future financing, and its alleged failure to disclose the risks and conflicts identified above while affirmatively presenting itself as the Company's appropriate and exclusive intermediary.

49.- Spartan had access to due-diligence materials, investor information, transaction documents, financing terms, conversion and resale mechanics, communications with investor-side participants, and information about the Company's thinly traded stock. Its receipt of transaction-based compensation gave it a concrete financial incentive to close the transactions it presented.

50.- Lucosky Brookman's scienter is supported by its alleged preexisting relationship with Spartan, its acceptance and pursuit of a Spartan-referred financing and registration matter despite a conflict that required it to decline the representation, its failure to disclose that conflict or obtain effective informed consent, its professional access to the financing documents and transaction structure, and its failure to give the Company independent advice regarding those conflicts and risks.

51.- Rosen's and Braun's scienter is supported by their alleged participation in investor-side financing, undisclosed trading and resale activity, concealment of their actual intentions, and the later public allegations concerning their conduct in other public-company transactions.

52.- The specific deceptive acts alleged against each Defendant include more than failure to prevent another's wrongdoing: Spartan controlled and monetized the financing channel, made the investor introductions, took fees and stock compensation, imposed financing restrictions, and concealed material conflicts and risks; Lucosky Brookman accepted and performed conflicted legal work while omitting material conflict and risk disclosures; and Rosen, Braun, other Defendants participated in the investor-side financing and concealment of their actual intentions and coordinated activity.

***Timeliness and Discovery Rule***

53.- Plaintiffs did not discover, and could not reasonably have discovered, facts sufficient to plead the alleged market-manipulation scheme, the related investor-side conduct, or the alleged coordination and concealment by Spartan and Lucosky Brookman until the public indictments and SEC action were announced in January 2026.

54.- Before those announcements, Plaintiffs knew that the stock price had declined and the S-1 was not completed, but those facts did not disclose the alleged fraudulent scheme, the investor-side market-manipulation risk, or the alleged conflict and coordination among Defendants.

55.- Plaintiffs brought these claims within two years after discovering the facts constituting the alleged securities-fraud violation and within the applicable five-year federal repose period. See 28 U.S.C. § 1658(b).

56.- To the extent any state-law limitation period applies, it was tolled by Defendants' concealment, Plaintiffs' lack of knowledge of the operative facts, and Plaintiffs' exercise of reasonable diligence after the public disclosure of the related proceedings.

## CLAIMS FOR RELIEF

***Count I — Violation of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c): Primary Scheme Liability***

57.- Plaintiffs incorporate paragraphs 1–56.

58.- Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5(a) and (c) prohibit a person from employing a device, scheme, or artifice to defraud, or engaging in an act, practice, or course of business that operates as a fraud or deceit, in connection with the purchase or sale of securities.

59.- Defendants engaged in a deceptive scheme in connection with the Company's sale and issuance of securities to investor-side participants and to Spartan, the convertible-loan transactions, the contemplated registration and resale process, and trading in the Company's common stock.

60.- Spartan's primary deceptive acts included, without limitation: (a) positioning itself as the exclusive investment-banking gatekeeper; (b) sourcing the investor-side

participants; (c) accepting cash and stock compensation tied to the financing; (d) restricting alternative financing; (e) referring the Company to Lucosky Brookman without disclosure of the alleged relationship and conflict; (f) concealing material transaction, investor, and conflict risks; and (g) directing the Company into a registration path while failing to disclose the matters that materially undermined that path.

61.- Lucosky Brookman's primary deceptive acts included accepting and performing legal work in connection with a Spartan-referred financing and registration path while failing to disclose its alleged relationship and conflict with Spartan or to give the Company independent, candid, and competent advice concerning the financing's material risks.

62.- Rosen, Braun, and Stock Loan Solutions committed primary deceptive acts by participating in the investor-side financing and concealing material facts concerning the actual purpose, structure, coordination, trading, conversion, promotion, resale, and market impact of the transactions at the behest and in conspiracy with Spartan and Luckosky.

63.- Defendants acted knowingly or recklessly. The facts alleged in paragraphs 48–52 give rise to a strong inference that is at least as compelling as any opposing innocent inference: a registered broker-dealer and its securities-law referral source directly profited from, controlled, and vouched for investor-side financing while concealing a material relationship, material conflicts, and risks inherent in the very transaction they caused the Company to undertake.

64.- The conduct was material because a reasonable issuer deciding whether to sell securities, issue stock compensation, grant financing rights, and limit its ability to seek alternatives would consider the undisclosed relationships, conflicts, investor-side risks, and the actual nature of the financing important.

65.- The conduct was in connection with the Company's sale and issuance of securities. Had the Company known the concealed facts, it would not have entered the transactions on the same terms, paid the same compensation, issued the same stock, accepted the same investors, or restricted its alternative financing options.

66.- As a direct and proximate result, the Company suffered damages in an amount to be proven at trial. Plaintiffs seek recovery solely for the benefit of the Company.

***Count II — Violation of Section 10(b) and Rule 10b-5(b): Material Misstatements and Omissions***

67.- Plaintiffs incorporate paragraphs 1–66.

68.- Spartan Securities' March 2022 engagement agreement stated that Spartan would serve as the Company's exclusive agent, advisor, or underwriter in securities offerings. The statement was materially misleading when made because Spartan omitted the alleged conflicts, undisclosed relationships, investor-side risks, and coordinated conduct described above, which rendered its representation of itself as a suitable exclusive intermediary misleading.

69.- Spartan and Lucosky Brookman had a duty to disclose the material information omitted because they undertook to speak about and structure the financing, chose

to recommend, arrange, and advise on the transactions, and created a partial and misleading picture of the transaction's suitability and risks.

70.- The omitted information includes: (a) the relationship between Spartan and Lucosky Brookman; (b) Lucosky Brookman's prior or continuing work for Spartan; (c) Spartan's transaction-based compensation and related financial conflicts; (d) the risks posed by the investor-side participants, convertible financing, conversion, resale, short selling, and dilution; (e) the actual limitations Spartan's exclusivity arrangements imposed on alternative financing; and (f) communications, agreements, or understandings about trading, promotion, resale, conversion, financing, and registration.

71.- Rosen, Braun, at the behest of Spartan Capital made or caused material omissions concerning their investment intent, beneficial ownership, conversion, resale, trading, promotion, and market activity. Their omissions made their participation in the financing materially misleading.

72.- The allegations identify the speaker or actor, the time and place of the transaction and agreement, the material facts omitted, why the transaction-related statements were misleading, the particular facts supporting scienter, and the resulting loss.

73.- Plaintiffs relied on the representations and omissions in deciding to enter the transactions, issue securities and compensation, and allow Spartan and Lucosky Brookman to control the financing and registration process. The Company's sale and issuance of securities was therefore directly induced by the fraud.

74.- The omissions and misrepresentations proximately caused the Company's damages, including transaction costs, fees, stock compensation, lost financing opportunities, dilution, loss of enterprise value, and the foreseeable destruction of shareholder value when the concealed risks materialized.

***Count III — Control-Person Liability Under Section 20(a) of the Exchange Act***

75.- Plaintiffs incorporate paragraphs 1–74.

76.- Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) imposes joint and several liability on a person who controls a primary violator, subject to the statutory good-faith defense.

77.- Spartan Capital, Spartan Securities, Lowrey, Faucetta, Diamond, Monchik, controlled or had the power to control the persons and entities that committed the primary violations alleged in Counts I and II.

78.- The controlling Defendants had the power to influence the challenged financing, investor introductions, compensation, disclosures, transaction documents, registration strategy, supervisory processes, and securities-related communications. Lowrey and Faucetta, by virtue of their executive and managing-director roles and their alleged actions, authority, knowledge, supervision, authorization, ratification, or ability to prevent the challenged conduct, were culpable participants and did not act in good faith.

79.- The Company suffered damages as a direct and proximate result of the controlled persons' violations.

***Count IV — Professional Negligence / Legal Malpractice Against Lucosky Brookman***

80.- Plaintiffs incorporate paragraphs 1–79.

81.- Lucosky Brookman undertook to represent or provide legal services to the Company in connection with the Spartan-referred financing, the convertible-loan transactions, and/or the Company's registration path. An attorney-client relationship therefore existed.

82.- Lucosky Brookman owed the Company duties of competent, loyal, independent, conflict-free, and candid professional service. Those duties included identifying conflicts; declining a representation when the firm could not exercise independent professional judgment; providing full and candid conflict disclosure; obtaining informed consent only when a conflict was consentable; advising the Company about material securities-law and transaction risks; and avoiding conduct adverse to the Company.

> 82A.- The alleged Spartan conflict was nonconsentable. Lucosky Brookman's professional relationship with Spartan, the referral source, and Spartan's financial interest in the Company's financing and registration path required Lucosky Brookman to evaluate, advise on, and potentially oppose the actions and interests of Spartan. That conflict so materially limited the firm's ability to represent the Company that Lucosky Brookman should have declined the representation at the outset and should not have pursued the Spartan-directed financing or registration path.

82B.- Lucosky Brookman breached its duties by, among other things: (a) accepting and pursuing the Spartan-referred work despite the conflict; (b) failing to decline a representation it could not undertake loyally and independently; (c) failing to disclose the alleged prior or continuing relationship with Spartan and its effect on the representation; (d) failing to obtain effective informed consent, even assuming consent was possible; (e) failing to provide independent advice about the investor-side financing and its risks; (f) failing to advise the Company adequately concerning the convertible-loan, dilution, resale, trading, and registration risks; and (g) participating in or concealing the scheme alleged above.

82C.- But for Lucosky Brookman's breaches, the Company would have retained independent counsel, evaluated and pursued alternative financing and registration options, declined or renegotiated the challenged transactions, and acted to prevent or mitigate the resulting losses.

82D.- The Company suffered damages in an amount to be proven at trial.

83.- The conflict-based breaches alleged above were a direct and proximate cause of the Company's injury because they deprived the Company of independent legal advice at the point it decided whether to accept or pursue the Spartan-directed financing and registration path.

84.- The Company suffered damages from Lucosky Brookman's professional negligence, including fees and consideration paid in connection with the challenged

transactions, costs of the failed registration path, lost financing opportunities, dilution, and loss of enterprise value.

85.- The Company is entitled to compensatory damages and any other relief available for Lucosky Brookman's professional negligence and legal malpractice.

***Count V — Oklahoma Common-Law Fraud and Fraudulent Concealment***

86.- Plaintiffs incorporate paragraphs 1–85.

87.- Defendants made material representations and concealed material facts concerning the suitability and legitimacy of the financing, the identity and risk profile of the investor-side participants, Defendants' relationships and conflicts, and the nature of the contemplated registration path.

88.- Defendants knew the representations were false or misleading when made, or made them recklessly without knowledge of their truth, and concealed material facts with the intent that the Company rely on the incomplete and misleading information.

89.- The Company reasonably relied on Defendants' representations, omissions, professional roles, and apparent legitimacy in entering the securities transactions, issuing stock compensation, paying transaction fees, and limiting alternative financing.

90.- The Company suffered damages proximately caused by the fraud and concealment.

**Count VI — Civil Conspiracy and Concerted-Action Liability Under Oklahoma Law**

91.- Plaintiffs incorporate paragraphs 1–90.

92.- Spartan, Lowrey, Faucetta, and Lucosky Brookman acted pursuant to an express or tacit agreement to accomplish an unlawful objective or to use unlawful means: obtaining financing and securities-related compensation from the Company while concealing conflicts, investor-side risks, and the true nature of the transaction.

93.- Each conspirator committed overt acts in furtherance of the agreement, including investor referral and introduction, legal referral and work, transaction structuring, executive or managerial authorization, supervision, ratification, or concealment of Spartan's conduct, receipt of fees or stock compensation, omissions of material facts, and securities-related trading, resale, conversion, promotion, or market activity.

94.- The conspiracy and overt acts caused the Company's damages. Plaintiffs assert this count as a theory of joint liability for the underlying torts, not as a stand-alone tort divorced from an actionable wrong.

***Count VII — Unjust Enrichment, Restitution, and Disgorgement***

95.- Plaintiffs incorporate paragraphs 1–94.

96.- Defendants received money, stock, warrants, fees, securities rights, legal fees, trading proceeds, or other benefits traceable to the Company's transactions and the alleged misconduct.

97.- It would be inequitable for Defendants to retain those benefits. Plaintiffs seek restitution, disgorgement to the extent permitted, an accounting, and imposition of a constructive trust or equitable lien over proceeds or property traceable to the scheme.

**DAMAGES**

98.- Plaintiffs seek recovery for the Company's damages, including: (a) the $25,000 advance paid to Spartan; (b) the approximately $125,000 transaction fee tied to the investor-side financing; (c) the value of the approximately 58,000,000 shares issued to Spartan Capital; (d) costs of the failed registration and financing process; (e) dilution, lost financing opportunities, and loss of enterprise value; (f) lost value of Company securities; (g) consequential damages; (h) prejudgment and post-judgment interest; and (i) fees and costs where permitted by statute, contract, or equity.

99.- Plaintiffs reserve the right to amend the damages allegations after discovery and expert analysis of trading, loss causation, dilution, market impact, Defendants' profits, and recoverable losses.

***Count VIII — Russell Sinacori's Individual Claim for Fraud and Fraudulent Concealment and KVC Dominion LLLP's Claim for Fraud and Fraudulent Concealment***

100.- Plaintiff Russell Sinacori and KVC Dominion LLLP incorporate paragraphs 1–56 and 87–91.

101.- Defendants' material misrepresentations and omissions regarding the investor-side financing, Spartan's and Lucosky Brookman's conflicts, the viability of the registration path, and the risks concealed from the Company were intended to

induce, and did induce, Mr. Sinacori in his capacity as chief executive officer to continue pursuing the challenged financing and registration path.

102.- Mr. Sinacori's compensation agreement made his compensation contingent on, or materially dependent upon, the successful completion of the Company's registration, financing, and related corporate transactions. Defendants knew or recklessly disregarded that a collapse of the registration and financing path would foreseeably cause him distinct compensation loss. The same holds for KVC Dominion who was deprived of contractual options, notes, and other consideration as a result of the Defendants actions.

103.- In reliance on Defendants' misrepresentations and omissions, Mr. Sinacori continued to cause the Company to pursue the Spartan-directed transactions and registration path. When that path collapsed, he lost approximately $1,000,000 in compensation under his agreement. KVC Dominion, LLLP lost approximately $1.1 million in the form of options, deferred notes, and other instruments executed by the Company of value.

104.- Mr. Sinacori's compensation loss and that of KVC Dominion LLLP is distinct from the Company's loss and from any diminution in the value of Company securities. He seeks individual damages only to the extent the Court determines that this injury is direct, legally cognizable, and not derivative of the Company's injury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request judgment in their favor and against Defendants as follows:

A.- Awarding compensatory damages in an amount to be proven at trial;

B.- Awarding rescission, rescissionary damages, restitution, and disgorgement to the extent permitted by law;

C.- Ordering an accounting and imposing a constructive trust or equitable lien over traceable fees, stock, warrants, proceeds, or profits;

D.- Awarding prejudgment and post-judgment interest;

E.- Awarding attorneys' fees and costs where authorized;

F.- Granting leave to amend as additional facts are learned through discovery; and

G.- Awarding all other legal and equitable relief the Court deems just and proper.

Dated: ____August 23______________, 2026.

Respectfully submitted,

**KEVIN V. COX, OBA #20970**
Kevin V. Cox, PLLC
320 S. Boston Ave., #1020
Tulsa, OK 74103
(918) 984-2410
kvc@visionarylaw.org
www.visionarylaw.org

Attorneys for Plaintiffs